# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| VERMIN LOVE SUPREME,<br><br>*Plaintiff*,<br><br>vs.<br><br>KANSAS STATE ELECTIONS BOARD; SECRETARY OF STATE KRIS KOBACH (in his official and personal capacity); GOVERNOR JEFF COLYER (in his official and personal capacity); GOVERNOR'S CHIEF COUNSEL BRANT LAUE (in his official and personal capacity); KANSAS ATTORNEY GENERAL DEREK SCHMIDT (in his official and personal capacity); ELEECTIONS DIRECTOR BRYAN CASKEY (in his official capacity),<br><br>*Defendants.* | Case No. 18-cv-1182-EFM |

**MEMORANDUM OF LAW**

This case arises out of the Kansas State Elections Board's decision granting a residency-based objection to Plaintiff Vermin Love Supreme's candidacy for the office of Kansas Attorney General and thus, precluding him from appearing on the ballot in the upcoming Republican primary election. Plaintiff filed this action alleging violations of the U.S. Constitution, including violations of his First Amendment, procedural due process, and substantive due process rights, as well as similar violations of the Kansas Constitution. On July 3, 2018, the Court heard arguments from both parties regarding Plaintiff's Emergency *Ex Parte* Motion for a Temporary Restraining

1

Order and Preliminary Injunction (Docs. 4, 5, 8).[1] Because Plaintiff did not meet his burden to satisfy the requisite elements this Court must consider when determining whether to grant a preliminary injunction, the Court orally denied Plaintiff's motion. This Memorandum of Law adopts the Court's prior statements and further explains the Court's July 3, 2018, decision.

## I.     Factual and Procedural Background

Plaintiff is a resident of the Commonwealth of Massachusetts. On June 1, 2018, he filed his Declaration of Intention to run for the office of Kansas Attorney General. The Executive Director of the Kansas Republic Party, Jim Joice, filed an objection to Plaintiff's candidacy based on Plaintiff's residency. The Kansas State Elections Board ("Board") held a hearing on Joice's objection on June 11, 2018. Plaintiff, represented by counsel, argued that his residency was irrelevant because Kansas law did not require candidates for public office to be Kansas residents. While shortly before the hearing Plaintiff had faxed the Board a receipt indicating that he had obtained a rental property in Kansas for a $1 monthly rate, he did not argue that he was a resident of Kansas or that he intended to become a resident of Kansas.

The Board orally granted Joice's objection at the conclusion of the hearing, precluding Plaintiff from appearing on the ballot for the August 2018 Republic primary. It issued a written order to the same effect on June 27, 2018. The Board's order referenced a declaratory judgment issued by Judge Watson in the District Court for Shawnee County, Kansas, which concluded that existing Kansas law requires candidates for governor to be Kansas residents. It also noted that the

---

[1] Plaintiff filed his memorandum in support of his motion for temporary restraining order three times—twice on June 22, 2018 (Docs. 4, 5), and again on June 25, 2018 (Doc. 8). Plaintiff filed an errata on June 22, 2018, indicating that he inadvertently attached his memorandum instead of the motion as Doc. 4. It is unclear why Plaintiff filed the memorandum again on June 25, 2018. The Court, however, has reviewed each document and will address the arguments presented therein.

two participating Board members[2] disagreed with Plaintiff's position that Judge Watson's order only applied to candidacy requirements for individuals seeking to run for governor. Rather, the order notes that Secretary Kobach and Mr. Laue stated their belief that Judge Watson's order applied to all state office positions.

Judge Watson issued the declaratory judgment referenced by the Board on May 31, 2018, the day before Plaintiff filed his declaration of intention.[3] The dispute before Judge Watson involved whether Kansas law requires candidates for governor and lieutenant governor to be Kansas residents. In its 14-page memorandum and order, the court analyzed and interpreted various Kansas election laws, including constitutional and statutory provisions that apply to the offices of attorney general, governor, and lieutenant governor. While most of the provisions analyzed by the court apply equally to the offices of attorney general, governor, and lieutenant governor,[4] the court noted a few statutes applicable only to candidates running for governor and

---

[2] The Board is made up of three individuals, the Kansas Secretary of State, the Kansas Attorney General, and the Kansas Lieutenant Governor. Secretary Kris Kobach, Deputy Attorney General Athena Andaya (representing Attorney General Derek Schmidt), and Chief Counsel to Governor Colyer, Brant Laue (representing Lieutenant Governor Tracey Mann), attended the meeting. Deputy Attorney General Andaya abstained from discussion and voting on the matter.

[3] *Kan., ex rel. Schmidt v. Kobach*, Shawnee County District Court of Kansas, Case No. 2018-CV-285 (May 31, 2018).

[4] *See* Kan. Const. art. 1, § 1 ("The constitutional officers of the executive department shall be the governor, lieutenant governor, secretary of state, and attorney general, who shall have such qualifications as are provided by law."); K.S.A. § 25-4001 (addressing terms of governor, lieutenant governor, attorney general, and other state officers); K.S.A. § 25-4002 (noting that the law provides, "[e]xcept as otherwise provided in this act, election laws applicable to other state officers elected from the state as a whole shall apply to the nomination and election of the governor and lieutenant governor, secretary of state and attorney general"); K.S.A. § 25-101a (specifying what day the election of state officers must take place); K.S.A. § 25-303(b) (discussing nomination petitions for independent nominations); K.S.A. § 25-613 (requiring the name of each candidate for state office to be followed by the name of the city in which the candidate resides, but not the city *and* state); K.S.A. § 25-617 (providing a sample ballot listing the city of residence for candidates, but not state of residence); K.S.A. § 25-306b (prohibiting a candidate from withdrawing a nomination after the day of the primary election unless the candidate has a certification from a medical doctor regarding a severe medical hardship or "the nominee certifies to the secretary of state that the nominee does not reside in the state of Kansas").

3

lieutenant governor.[5] These statutes, however, largely mirror the corollary statutes applicable to the office of Attorney General, and the Court's analysis appears as though it would apply equally to these corollary statutes.[6] Additionally, the court rejected arguments that the Kansas Constitution's silence on residency reflects an intention to allow out-of-state candidates for Kansas offices, as well as an argument that a recent legislative enactment demonstrates that existing Kansas law does not contain a residency requirement.[7] After analyzing the parties' respective arguments, Judge Watson concluded:

> There is no single Kansas statute that explicitly requires candidates for Governor and Lieutenant Governor to be Kansas residents. A variety of other statutes imply such a residency requirement. There is an ambiguity in the law requiring the Court to employ canons of statutory construction. Construing the statutes discussed above *in pari materia*, it is clear that the Kansas Legislature intended to require candidates for Governor and Lieutenant Governor to be Kansas residents. This construction avoids unreasonable results and is consistent with a common sense approach to resolving the question at hand. . . . It is the judgment of this Court that existing Kansas law requires candidates for the offices of Governor and Lieutenant Governor of the State of Kansas to be Kansas residents.[8]

Plaintiff filed this action on June 22, 2018, alleging violations of his rights to free speech, association, and petition under the Kansas and U.S. Constitutions, violations of his procedural due process rights under the Kansas and U.S. Constitutions, and violations of his substantive due process rights under the Kansas and U.S. Constitutions. He also filed a motion seeking injunctive relief to order the state of Kansas to include his name on the ballot for the upcoming Republican primary.

---

[5] *See* K.S.A. §§ 25-4005, 4006.

[6] *See* K.S.A. §§ 25-205, 206.

[7] *See* H.B. 2539, 2017-2018 Leg. Sess. (Kan. 2018).

[8] *See* Doc. 6-16.

On July 3, 2018, the Court held a hearing on Plaintiff's motion for a temporary restraining order. After hearing argument from both parties, the Court denied Plaintiff's motion. This memorandum of law adopts the Court's statements made on the record during the hearing and provides further elaboration for the Court's decision.

## II. Legal Standard

Before this Court may grant Plaintiff's request for a preliminary injunction, Plaintiff must establish four factors: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest."[9] "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal."[10] Further, because the temporary restraining order sought by Plaintiff would upset the status quo, Plaintiff must satisfy a heightened standard "with regard to the likelihood of success on the merits and with regard to the balance of harms."[11]

## III. Analysis

### A. Plaintiff has not demonstrated a substantial likelihood of prevailing on the merits.

Plaintiff's Complaint asserts three claims premised on alleged violations of the U.S. Constitution and three corollary claims premised on alleged violations of the Kansas Constitution.

---

[9] *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted).

[10] *Id.* (quotation omitted).

[11] *Fish v. Kobach*, 840 F.3d 710, 723-24 (10th Cir. 2016) (quotation omitted). While Plaintiff conceded that this heightened standard applies here, the Court notes that even if the Court did not apply a heightened standard the result would not change.

5

The Court addresses Plaintiff's federal constitutional claims below and concludes that Plaintiff has not met his burden to demonstrate a likelihood of prevailing on the merits of his federal claims. The Court also concludes that Plaintiff does not have a likelihood of prevailing on the merits of his Kansas constitutional claims as it is unlikely this Court will exercise jurisdiction over such claims.[12]

    1.    *First Amendment claim and the* Pullman[13] *doctrine*

Plaintiff's First Amendment claim requires the Court to accept a certain interpretation of Kansas election laws—that Kansas law contains no residency requirement for candidates running for Kansas Attorney General.[14] Defendant argues that Kansas law as it stands today includes a residency requirement, making Plaintiff ineligible to run for Kansas Attorney General and precluding his First Amendment claim. Plaintiff argues that Kansas law contains no such requirement and that the Board's action in keeping him off the ballot violates his First Amendment rights, as well as the First Amendment rights of the voters who may have voted for him. Because Plaintiff's First Amendment claim rests entirely upon the meaning of Kansas election laws, the Court must consider, in determining whether Plaintiff has met his burden to show a substantial likelihood on the merits of his claims, whether the Court will likely exercise its discretion to abstain from hearing Plaintiff's First Amendment claim.

---

[12] Based on a preliminary review of the merits of Plaintiff's claims, it appears likely that the Court will exercise its discretion to abstain from hearing any federal constitution claims that might survive a motion to dismiss. If so, the Court would also refrain from deciding the state constitutional claims. Thus, because it appears unlikely that the Court will substantively address Plaintiff's corollary state-law claims, Plaintiff has not shown a likelihood of success on the merits of his state claims.

[13] *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

[14] Plaintiff has conceded that residency requirements are generally valid, and that if he were to run for the same office in 2022, after Kansas law has been amended to explicitly require residency, that he would not have a First Amendment claim if the Board kept him off the ballot due to his Massachusetts residency.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule."[15] Indeed, absent exceptional circumstances, this Court should not exercise its judicial discretion to dismiss a suit otherwise properly before it.[16] The Court may abstain, however, in certain narrow circumstances, including under the *Pullman* abstention doctrine "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided."[17] "*Pullman* abstention is appropriate when: '(1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim; and (3) an incorrect decision of state law . . . would hinder important state law policies.' "[18]

Plaintiff's First Amendment claim satisfies each of the requirements for *Pullman* abstention. First, Plaintiff's claim appears to rest on an uncertain issue of state law—whether Kansas requires candidates for the office of Attorney General to be Kansas residents. Neither party points the Court to any Kansas Supreme Court or appellate decision interpreting the relevant Kansas laws at issue here.[19] Rather, the only Kansas decision addressing a similar issue—whether the candidates for governor and lieutenant governor must be Kansas residents—concluded that candidates must be Kansas residents.[20] Second, the state law issue in question here is amenable to

---

[15] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

[16] *See id*.

[17] *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (quotation omitted).

[18] *Kan. Judicial Rev. v. Stout*, 519 F.3d 1107, 1118-19 (10th Cir. 2008) (quoting *Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992)) (alteration in original).

[19] Federal courts typically follow state supreme court and appellate court decisions when interpreting state law. *See Gooding v. Wilson*, 405 U.S. 518, 525 n.3 (1972).

[20] The U.S. Supreme Court has recognized that "the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law." *Harris Cty. Comm'rs Court v. Moore*, 420 U.S. 77, 84 (1975) (citations omitted). Further, "[i]f the state courts would

an interpretation that obviates Plaintiff's constitutional claim. While this Court does not opine on how Kansas election laws should be interpreted, it notes that Kansas election laws may reasonably be interpreted to require a residency requirement for candidates for the office of Attorney General. Judge Watson's reasoned order, albeit it in the context of residency requirements for candidates for governor and lieutenant governor, demonstrates that Kansas election laws are amenable to an interpretation that requires candidates to be Kansas residents.[21]

Finally, an incorrect decision of state law would significantly hinder important state law policies. Kansas has a significant interest in the integrity of its elections, the seriousness of its candidates, and the fair, honest, and orderly election process.[22] Further, as noted by Defendants, residency requirements often serve an important purpose and help safeguard citizens from "raiders" who are not seriously committed to the interests of the community for which they seek office.[23] An incorrect decision in Plaintiff's favor and at odds with the only Kansas authority to decide the issue would hinder these important interests.

---

be likely to construe the statute in a fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong." *Id.* Here, a review of the only state authority to speak on the issue suggests a likelihood that state courts would construe the relevant statutory framework in a manner that would obviate Plaintiff's claim.

[21] Indeed, most of the laws analyzed by Judge Watson also apply to the office of Attorney General, and the election laws that applied only to the election of governor and lieutenant governor do not appear to materially differ from those applicable to the office of Attorney General for purposes of Judge Watson's analysis.

[22] *See Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (recognizing that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes"); *Lubin v. Panish*, 415 U.S. 709, 715 (1974) ("The means of testing the seriousness of a given candidacy may be open to debate; the fundamental importance of ballots of reasonable size limited to serious candidates with some prospects of public support is not."); *Bullock v. Carter*, 405 U.S. 134, 145 (1972) ("Moreover, a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies.").

[23] The Court does not presume that Plaintiff lacks the seriousness to hold office, but notes that Plaintiff has not stated any intention to hold office so as to advance Kansans' interests. Rather, Plaintiff's counsel began the hearing on this motion by stating, "my client chose to enter the race for Kansas Attorney General because he was aware of the fact that Kansas did have no residency requirement for that office."

This Court is loath to interfere with an election of Kansas officials based on ambiguous Kansas statutes that are subject to varying reasonable interpretations, one of which follows the only state authority to speak on the issue and would obviate Plaintiff's claim. Accordingly, although the Court does not decide to abstain today, given the record currently before the Court, it believes that it will likely follow the lead of other courts to have entertained similar arguments and abstain upon a proper motion to do so.[24] Given the likelihood that the Court will abstain from hearing the merits of Plaintiff's First Amendment claim, Plaintiff has failed to meet his burden to show a likelihood of success on the merits of that claim.

2. *Procedural Due Process*

Courts assessing whether a procedural due process violation has occurred must engage in a two-step inquiry, requiring the Court to ask: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."[25] Procedural due process does not prevent the government from depriving an individual of a constitutionally protected interest, but rather, merely requires that the government provide that individual with a fair procedure in doing so. "The

---

[24] *See, e.g.*, *Barr v. Galvin*, 626 F.3d 99, 101-02 (1st Cir. 2010) (reversing district court's conclusion that state law was unconstitutionally vague as applied and concluding that the statute was "in need of interpretive clarification" and pursuant to *Pullman*, "that interpretation should be effected by the [state] courts"); *Moore v. Hosemann*, 591 F.3d 741, 742 (5th Cir. 2009) (recognizing that the plaintiff's "challenge, like many election disputes, is based on an interpretation of uncertain state law, which should be resolved at the state level before we consider wading into a constitutional thicket"). Here, unlike *Barr* and *Moore* which involved candidates for president and vice president, the office at issue is a Kansas state office, making the argument in favor of abstention all the more compelling.

[25] *Guttman v. Khalsa*, 669 F.3d 1101, 1113-14 (10th Cir. 2012) (quotation omitted).

essence of procedural due process is the provision to the affected party of *some* kind of notice and *some* kind of hearing."[26]

Plaintiff claims that Defendants arbitrarily disqualified him from appearing on the ballot, depriving him of his due process rights under the Fourteenth Amendment, and that K.S.A. § 25-308, on its face and as applied, allows the Board to arbitrarily decide who may appear on the ballot, in violation of "the rights guaranteed to the Plaintiff by the Fourteenth Amendment." Defendants argue that Plaintiff's cause of action fails because it cannot meet either of the necessary prongs of a valid procedural due process claim.

Here, Plaintiff has not met his burden to show a substantial likelihood of success in meeting either prong of the relevant inquiry. Plaintiff's motion for a temporary restraining order does not set forth the well-known two-step inquiry noted above; nor does it attempt to show how the inquiries are satisfied here. Indeed, Plaintiff fails to specifically identify the constitutionally protected interest of which Defendants allegedly deprived him. To the extent he claims a constitutionally protected interest in running for Kansas Attorney General, he has failed to cite any legal authority granting him a constitutionally protected interest in doing so. Rather, the Tenth Circuit has noted that there is no fundamental right to run for office and he cites no statutory or

---

[26] *Moore v. Bd of Cty. Comm'rs*, 507 F.3d 1257, 1259 (10th Cir. 2007) (quotation and alteration omitted) (emphases in original).

10

other source creating such a right.[27] He also fails to establish that he may pursue a claim based on the alleged interests of voters.[28]

Further, assuming Plaintiff had shown that he possessed a protected interest, he has failed to demonstrate a likelihood of success in showing that the process afforded him by the Board violated his procedural due process rights.[29] Plaintiff wholly failed to take advantage of the post-deprivation procedures available under state law to challenge the Board's decision and to gain access to the ballot. His argument that the Board's *written* order did not issue until after the deadline for seeking such review does not save his claim. Nothing in K.S.A. § 25-308 required Plaintiff to have received a written order prior to seeking relief from the Board's order, and nothing appears to have functionally precluded him from seeking such relief as Plaintiff filed the current action before receiving the Board's written order. To the contrary, Plaintiff admitted that he may

---

[27] *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from the Constitution itself, . . . c."); *Clements v. Fashing*, 457 U.S. 957, 958 (1982) ("Candidacy is not a 'fundamental right'. . ."); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (explaining that property interests "are not created by the Constitution," but rather, "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"); *Citizen Ctr. v. Gessler*, 770 F.3d 900, 917 (10th Cir. 2011) (concluding that plaintiff failed to identify a liberty interest and "without a protected liberty interest, the federal and state claims for denial of procedural due process fail as a matter of law"); *Carver v. Dennis*, 104 F.3d 847, 850-51 (6th Cir. 1997) (noting that the U.S. Supreme Court "has never recognized a fundamental right to express one's political views through candidacy") (citations omitted); *Thournir v. Meyer*, 909 F.2d 408, 412 (10th Cir. 1990) ("Candidacy itself is not a fundamental right . . .").

[28] *See, e.g.*, *Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir. 1977) (noting that the U.S Supreme Court has "indicate[d] that plaintiff's interest in seeking office, by itself, is not entitled to constitutional protection," and that "since plaintiff has not alleged that by running for Congress he was advancing the political ideas of a particular set of voters, he cannot bring his action under the rubric of freedom of association which the Supreme Court has embraced"). Although Plaintiff identifies voters that would "consider" voting for Plaintiff, he does not identify any voters that share his political beliefs or ideas, that associate with Plaintiff politically, or that wish to vote for Plaintiff.

[29] Plaintiff does not allege that the Board deprived him of notice of the objection to his candidacy, an opportunity to be heard regarding the objection, or a fair and impartial tribunal. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 522 (10th Cir. 1998) (reversing denial of motion to dismiss where plaintiff "received notice, an opportunity to be heard by an impartial tribunal, and various post-termination remedies"). Rather, it appears that Plaintiff received adequate notice of the hearing, Plaintiff had legal representation during the hearing, and the Board member that arguably had an interest in Plaintiff's candidacy did not participate in the discussion or decision regarding Plaintiff's candidacy. Plaintiff's arguments as to a breakdown in the process provided to him do not convince the Court that he has a substantial likelihood of success on the merits of this claim.

have had a right to seek mandamus, but that he felt it more appropriate to bring the action in federal court. Plaintiff has identified no justification for his failure to follow the state procedure available to review the Board's decision and has not shown a likelihood of success on the merits of his procedural due process claim.[30]

Simply stated, Plaintiff has failed to specifically identify the interest he alleges entitled him to procedural due process before the Board, and regardless, in light of Plaintiff's failure to pursue the avenue of relief for reviewing the Board's decision, the process afforded Plaintiff by the Board does not appear to have deprived Plaintiff of any due process rights he may have held.[31] Plaintiff has not met his burden to show a substantial likelihood of success on the merits of his procedural due process claim.

    3.    *Substantive Due Process*

"Substantive due process arises from the Fourteenth Amendment's protections against governmental deprivations 'without due process of law.' "[32] It "protects fundamental liberty interests and protects against the exercise of government authority that 'shocks the conscience.' "[33] Whether a challenged action "shocks the conscience" depends on the circumstances presented in each case.[34] "Substantive due process prohibits only the most egregious official conduct," and

---

[30] *See Pitts v. Bd. of Educ. of U.S.D. 305*, 869 F.2d 555, 557 (10th Cir. 1989) (concluding that the plaintiff's failure to pursue process afforded under state law deprived the school bard of the opportunity to provide him with due process and that the plaintiff gave up his right to test the correctness of the board's decision).

[31] *See id*.

[32] *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting U.S. Const. amend. XIV, § 1).

[33] *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013) (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008)).

[34] *Id*. at 750.

12

"[e]ven most intentionally inflicted injuries caused by misuse of government authority will not meet this standard."[35]

Plaintiff falls far short of demonstrating a likelihood of success on the merits of his substantive due process claim as he has not pointed to conduct that shocks the conscience of the Court.[36] While he alleges that the Board "arbitrarily disqualified" him from the ballot and that the process by which the residency requirement came to be enforced violates his substantive due process rights, he does not allege any misuse of government authority or conduct demonstrating "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."[37] Rather, Defendants allege that the Board relied on the legal reasoning of a Kansas state court judge in concluding that Kansas requires candidates for state offices, including the office of Attorney General, to be Kansas residents. The Court cannot conclude that either Judge Watson's decision or the Board's reliance on that decision in sustaining the residency objection to Plaintiff's candidacy constitutes conduct that shocks the conscience. Accordingly, the Court concludes that Plaintiff has failed to satisfy his burden to demonstrate a likelihood of success on the merits of his substantive due process claim.

**B.     Plaintiff will suffer irreparable harm in the absence of injunctive relief.**

Plaintiff alleges that he will suffer irreparable harm if the Court does not grant his request for injunctive relief. Because denying Plaintiff's request would result in Plaintiff's name not being

---

[35] *Id*. (quotations and citations omitted).

[36] Although Plaintiff stated during oral argument that his primary federal claim is substantive due process, the phrase "substantive due process" does not appear in Plaintiff's motion for a temporary restraining order.

[37] *Tonkovich*, 159 F.3d at 528.

13

included on the upcoming primary election, the Court agrees that Plaintiff will suffer irreparable harm in the absence of injunctive relief.

C.      **Plaintiff's threatened injury does not outweigh the threatened harm to Defendants.**

Although Plaintiff will be denied access to the ballot, his injury is to his ability to appear as a candidate on the Republican primary ballot and not to his ability to otherwise advocate his positions. In weighing the threatened injury to Plaintiff with the threatened harm to Defendants, the Court concludes that the threatened injury to Plaintiff does not outweigh the threatened harm to Defendants. The state election machinery has already been set in motion, only a short time remains before the primary election, and granting Plaintiff's request would necessitate a restructuring of the election process that would disrupt the election process. Further, the Court recognizes the likely harm and confusion that would ensue if the Court issued a decision functionally incompatible with the recent declaratory judgment issued by the Kansas state court.

D.      **The Public interest does not favor injunctive relief.**

Granting an injunction may provide certain benefits to the public interest, but it would also result in adverse effects to the public interest. Undoubtedly, placing Plaintiff's name on the ballot would provide voters with an additional choice in the Republican primary election for the Kansas Attorney General. But this benefit is outweighed by the public interest in maintaining orderly elections and consistent application of state law. Kansas "has an interest, if not a duty, to protect the integrity of its political processes," and to employ a reliable and orderly primary election process.[38] Absentee ballots have already been sent out, in accordance with federal law, and to include Plaintiff's name on the ballot at this late date would likely cause confusion and disrupt the

---

[38] *See Bullock*, 405 U.S. at 145.

14

integrity of the political process. Further, Plaintiff has not identified any voters that share Plaintiff's political views, that associate politically with Plaintiff, or that have an intention of voting for Plaintiff.[39] In weighing the conflicting public interests present here, the Court concludes that the public interest favors maintaining the status quo.

## IV. Conclusion

Plaintiff has satisfied only one of the four elements this Court considers when determining whether to grant a temporary restraining order. He has failed to satisfy his burden with regard to showing a likelihood of success on the merits, the balance of harms, and the public interest. For these reasons and for the reasons previously stated on the record, the Court denies Plaintiff's motion for a temporary restraining order.

**IT IS THEREFORE ORDERED** that Plaintiff's Memorandum of Points and Authorities in Support of Emergency *Ex Parte* Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Memorandum of Points and Authorities in Support of Emergency *Ex Parte* Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 8) is **DENIED**.

---

[39] Plaintiff identifies only a small number of voters that have stated an intention to *consider* voting for him if he is included as a candidate in the primary election. None of the voters submitting affidavits on Plaintiff's behalf, however, suggested that they subscribe to his views, associate with him politically, or intend to vote for him.

15

**IT IS SO ORDERED.**

Dated this 6th day of July, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE